Michael Kind, Esq. (SBN: 13903)
KAZEROUNI LAW GROUP, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117
Phone: (800) 400-6808 x7
FAX: (800) 520-5523
mkind@kazlg.com

Sara Khosroabadi, Esq. (SBN 13703)
HYDE & SWIGART
7854 W. Sahara Avenue
Las Vegas, NV 89117
Phone: (619) 233-7770
Fax: (619) 297-1022
sara@westcoastlitigation.com

*Attorneys for Plaintiff*

*(Additional Counsel for Plaintiff listed below)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Jane Doe 1, individually and on behalf of all similarly situated individuals,<br><br>       Plaintiff,<br><br>-v-<br><br>Las Vegas Bistro, LLC, a Nevada limited liability company; Dean Martin Dr. – Las Vegas, LLC, a Nevada limited liability company; 2145 B Street, LLC, a Nevada limited liability company; MIC Limited, a Michigan corporation; Deja Vu Entertainment Enterprises of Minnesota, Inc., a Minnesota corporation; Deja Vu - Colorado Springs, Inc., a Colorado Corporation; Deja Vu, Inc., a Nevada corporation; Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and; Deja Vu Services, Inc., a Michigan corporation,<br><br>       Defendants. | Case No.: 2:17-cv-00205<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff, on behalf of herself and all other similarly situated individuals in the Class defined below, brings this Class and Collective Action Complaint against Defendants and alleges as follows:

## I.    **INTRODUCTION**

1.    Plaintiff Jane Doe 1 ("Doe 1" or "Plaintiff") brings this action against Las Vegas Bistro, LLC, a Nevada limited liability company; Dean Martin Dr. – Las Vegas, LLC, a Nevada limited liability company; 2145 B Street, LLC, a Nevada limited liability company; MIC Limited, a Michigan corporation; Deja Vu Entertainment Enterprises of Minnesota, Inc., a Minnesota corporation; Deja Vu - Colorado Springs, Inc., a Colorado Corporation; Deja Vu, Inc., a Nevada corporation; Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and Deja Vu Services, Inc., a Michigan corporation (hereinafter collectively referred to as "Defendants") to obtain declaratory, injunctive, and monetary relief resulting from Defendants' misclassification of exotic Dancers as "independent contractors," as opposed to "employees." The Class that Plaintiff seeks to represent is composed of female employees who, during the relevant time period, worked as exotic dancers (hereinafter, "Dancers") at Deja Vu Nightclubs in the United States. Plaintiff contends that Defendants denied the dancers their fundamental rights under federal and state wage and hour laws, causing them financial loss and injury. Specifically, Plaintiff alleges that Defendants intentionally misclassified dancers as independent contractors to deny them, and all other class members, minimum wages due and other employment benefits. Additionally, Plaintiff contends Defendants imposed unlawful tip sharing when they required dancers to share gratuities that patrons gave them with Defendants and other employees. Based on the alleged violations of state and federal law, Plaintiff brings this action against Defendants, seeking back pay, restitution, liquidated damages, injunctive and declaratory relief, civil penalties, prejudgment interest, attorneys' fees and costs, and any and all other relief that the Court deems just and reasonable in the circumstances.

2.    In 2014, the Nevada Supreme Court confirmed that the federal FLSA "economic reality test" for determining the existence of an employer-employee relationship applied in Nevada and confirmed that dancers at adult nightclubs were employees under federal and Nevada law:

> Thus, based on our review of the totality of the circumstances of the working
> relationship's economic reality, Sapphire qualifies as an employer under NRS

608.011, and the performers therefore qualify as employees under NRS 608.010. In so holding, this court is in accord with the great weight of authority, which has almost "without exception ... found an employment relationship and required ... nightclub[s] to pay [their] dancers a minimum wage." *See Clincy*, 808 F.Supp.2d at 1343 (internal quotation omitted) (collecting cases). We therefore reverse the district court's grant of summary judgment in favor of Sapphire and remand for further proceedings consistent with this opinion.

*Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 960–61 (Nev. 2014), *reh'g denied* (Jan. 22, 2015), *quoting Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326, 1343 (N.D. Ga. 2011). Other Courts have made similar determinations. *See e.g.*, *McFeeley v. Jackson St. Entm't, LLC,* 825 F.3d 235 (4th Cir. 2016); *Verma v. 30001 Castor, Inc.*, 2014 WL 2957453 (E.D. Pa. June 30, 2014).

## II.  **JURISDICTION & VENUE**

3.     This Complaint alleges causes of action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 for all state law claims.

4.     This Court has original subject-matter jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that: (1) there are at least 100 members in the proposed Class; (2) the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs; and (3) a member of each of the proposed classes is a citizen of a state different from the state of citizenship of the Defendants.

5.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and 1391(c), because a substantial part of the events and conduct giving rise to the claims in this action occurred in this Judicial District.  As noted below, each Defendant has sufficient "minimum contacts with it such that the maintenance of [this] suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

6.     Certain Defendants including Deja Vu, Inc. and Deja Vu Services, Inc. adopted common business policies and conducted unlawful and deceptive practices in and from their principal places of business in Nevada pertaining to the misclassification of dancers in the Class and other acts complained of, which emanated to other states, harming Class members there. Those common business policies established and enforced by Deja Vu, Inc. and Deja Vu Services, Inc., as joint employers of the members of the Class defined herein, are challenged in this action.

### III.     PARTIES & STANDING

7.     Doe 1 is a resident of Saint Paul, Minnesota. At all relevant times, Doe 1 was Defendants' employee, as defined in 29 U.S.C. § 201 *et seq*. and Minn. Stat. §§ 177.23, 177.24 and 181.171, and Nev. Rev. Stat. §608.010 *et seq.* working as an exotic dancer at Defendants' nightclub at Hustler Club in Las Vegas, Nevada, the Deja Vu Nightclub in Minneapolis, Minnesota and the Deja Vu Nightclub in Colorado Springs, Colorado. Doe 1 worked for Defendants on various dates during the class period, starting in 2012, through her termination without cause on approximately March 11, 2016. Throughout the course of her employment with Defendants, Doe 1, like all other class members, was: (1) misclassified as an independent contractor; (2) deprived of wages and other benefits that she was entitled to as an employee; and (3) required to split tip income with Defendants and their employees.

8.     Pursuant to the principles set forth in *Jane Does 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 997 (N.D. Cal. 2015) (granting exotic dancers' motion to proceed anonymously and permitting present and future plaintiffs to use pseudonyms) and *Doe v. Ayers*, 789 F.3d 944, 944 (9th Cir. 2015) (finding Plaintiff inmate could proceed under a pseudonym because the severity of threatened harm, the reasonableness of his fears, and his Vulnerability to retaliation weighed in favor of anonymity), Plaintiff files this action under a fictitious name and seek to proceed anonymously, because: (a) she wishes to preserve her right to privacy; (b) there is a significant social stigma attached to Plaintiff's occupation as an exotic dancer; (c) there is an inherent amount of risk of injury by current and former patrons associated with Plaintiff's profession; and (d) Plaintiff would be hesitant to maintain this action

if her name was permanently associated with Defendants. For example, in another dancer misclassification case, after the defendant nightclub published the plaintiff dancer's true identify and contact information to patrons, she received threatening phone calls and a visit to her home by patrons, before the Court issued a temporary restraining order and protective order. *Verma v. 3001 Castor Inc. et al.*, Case No. 2:13-cv-03034 (E.D. Pa).

9. There is no prejudice to Defendants if Plaintiff files this action under a fictitious name and proceeds anonymously. In the ordinary course of business, Defendants identify Dancers, including Plaintiff, through pseudonyms and stage names. The Fifth Circuit has recognized:

> It is customary in Defendants' business for employee-dancers, like Plaintiffs, to use pseudonyms and stage names for both security and privacy purposes. The use of these names allays any reasonable fear that proceeding anonymously would offend the "customary and constitutionally-embedded presumption of openness in judicial proceedings."

*N.W. Enterprises, Inc. v. City of Houston*, 352 F.3d 162 (5th Cir. 2003).

10. There are no due process concerns if Plaintiff proceeds anonymously, because Plaintiff will privately disclose her identity to Defendants to allow Defendants to assess and defend her claims.

11. Deja Vu, Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and Deja Vu Services, Inc., are joint employers of all class members. Under federal and all applicable state laws, a "joint employer," is jointly and severally liable for violations of the wage and hour laws with the worker's nominal employer, if they are someone who acts "directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d).

12. The "Club Locator" feature on Defendants' common website, www.dejaVu.com, lists at least fifty-one (51) adult nightclubs that they own and/or operate in the United States, under the names "Deja Vu Showgirls," "Centerfolds," "Dreamgirls," "Little Darlings", "Buck's Cabaret, "Club Rouge," "Pole Position," and "Sam's After Dark," "along with eleven (11) "Larry Flynt's Hustler Clubs," where class members work and/or worked as

exotic dancers. *See* http://dejaVu.com/locations/ and http://hustlerclubs.com/hustler-locations/. (A complete list of the Deja Vu Nightclubs is attached hereto as Exhibit "A.") Together, these 62 adult nightclubs are referred to herein as the " Deja Vu Nightclubs" Excluded from the definition of "Deja Vu Nightclubs" as used in this Complaint are "Krush," "Hammered Harry's," "Cat's Meow," "Chicken Ranch Brothel," and the "Erotic Heritage Museum."

13. Each of the Deja Vu Nightclubs consists of several business entities, nearly all of which are Nevada business entities. Together, these entities comprise an enterprise and with Deja Vu, Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and Deja Vu Services, Inc. are the joint employers of the members of the Class. For instance, Plaintiff Jane Doe 1 worked at the Larry Flynt's Hustler Club in Las Vegas, Nevada. Located at 6005 Dean Martin Drive in Las Vegas, public records indicate that the property is owned by "Dean Martin Dr – Las Vegas, LLC," a Nevada domestic limited liability company that lists Harry V. Mohney as the manager. Upon information and belief, Mr. Harry Mohney resides in Las Vegas, Nevada. Public records indicate that the nightclub itself operates as "Las Vegas Bistro, LLC", also a Nevada domestic limited liability company. Las Vegas Bistro LLC's manager is Jason C-H Mohney. Upon information and belief, Mr. Jason C-H Mohney is the son of Mr. Harry Mohney and also resides in Las Vegas, Nevada. The Nevada Secretary of State's records show at least forty-six (46) Deja Vu-affiliated entities associated with Mr. Jason C-H Mohney and at least forty-three (43) Deja Vu-affiliated entities associated with Mr. Harry Mohney.

14. The Deja Vu club in Minneapolis, Minnesota is located at 315 Washington Avenue and public records indicate that the property is owned by MIC Limited, a Michigan corporation registered to do business with the Nevada Secretary of State that lists Christopher Corwin and George Couch as corporate officers. Upon information and belief, Mr. Couch is the son-in-law of Mr. Harry Mohney. Public records indicate that the nightclub itself operates as "Deja Vu Entertainment Enterprises of Minnesota, Inc.," a Minnesota corporation operated by Mr. Peter Hafiz. Upon information and belief, Mr. Hafiz is a longtime business associate of Mr. Harry Mohney and resides in the Twin Cities (MN) metropolitan area.

15.     The "Deja Vu Showgirls" club in Colorado Springs, Colorado is located at 2145 B St, Colorado Springs, Colorado and public records indicate that the property is owned and/or operated by "Deja Vu- Colorado Springs, Inc." a Colorado corporation registered to do business with the Colorado Secretary of State.   On its Articles of Incorporation, and other filings, Deja Vu - Colorado Springs, Inc. lists its principal place of business as 1530 1st Ave S, Suite A, Seattle, WA 98134, which is the same address as the Dreamgirls nightclub in Seattle.

16.     Upon information and belief, the operations of each of the Deja Vu Nightclubs are jointly controlled by Deja Vu, Inc., a Nevada domestic corporation, Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., a Michigan Corporation, and Deja Vu Services, Inc., a Michigan corporation registered to do business with the Nevada Secretary of State.   Deja Vu, Inc.'s president, secretary, and treasurer are Donald Krontz. Upon information and belief, Mr. Krontz is long-time business associate and personal friend of the Mohney family.  Mr. Krontz is a resident of Mira Loma, California, which is approximately a three-hour drive from Las Vegas, Nevada.  Deja Vu, Inc.'s director is George Couch. The Nevada Secretary of State's records show at least twenty (20) Deja Vu-affiliated entities associated with Mr. Krontz.

17.     Deja Vu Services, Inc.'s president, secretary, and treasurer is George Couch. Mr. Couch is also a director of Deja Vu Services, Inc. Upon information and belief, Mr. Couch is a resident of Brighton, Michigan and Harry Mohney's son-in-law.

18.     Deja Vu, Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and Deja Vu Services, Inc. are business entities that jointly employ and control the work of members of the Class that work or who have worked at all Deja Vu Nightclubs throughout the United States and, as such, are jointly and severally liable for any violations of the wage and hour laws set forth below.

19.     Defendant Deja Vu, Inc. is a Nevada Corporation. The registered office for Deja Vu, Inc. is 701 S Carson St. Ste 200, Carson City, NV 89701. From Las Vegas, Deja Vu, Inc. manages, operates and/or controls the business operation, employment, and wage policies at Deja Vu Nightclubs doing business under the "Deja Vu" trade names "Deja Vu Showgirls," "Deja Vu Dream Girls," "Deja Vu Centerfolds," "Hustler Club," "Little Darlings", "Buck's

Cabaret, "Club Rouge," "Pole Position," "Sam's After Dark," and/or other "Deja Vu" trade names nationwide, including the Deja Vu nightclub where Plaintiff and all class members work or worked.

20.     Defendant Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc. is a Michigan Corporation.  Deja Vu Consulting, Inc. was formed in or about 1994 when the nightclub "consulting" arm of Deja Vu, Inc., was branched off for tax reasons. Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc. provides management consulting services to each of the Deja Vu Nightclubs and also licenses various "Deja Vu" trademarks to the Deja Vu Nightclubs.  In or about December 17, 2014, Deja Vu Consulting, Inc. amended its articles of incorporation to reflect its name change to Pine Tree Assets, Inc.  Deja Vu Consulting, Inc. n/k/a/ Pine Tree Assets, Inc. has identical "consulting" and "licensing" contracts to each Deja Vu Nightclub under which each club pays it significant monthly fees. Deja Vu Consulting, Inc. n/k/a/ Pine Tree Assets, Inc. establishes policies, which confirm that it controls the workplace at all of the Deja Vu Nightclubs, including that pertaining to the classification and wage policies of dancers working at Deja Vu Nightclubs.  Upon information and belief, Deja Vu Consulting, Inc.  n/k/a/ Pine Tree Assets, Inc.'s stock is held by Dynamic Industries, which in turn is owned by Harry Mohney's family trust, the Durand Trust.  Upon information and belief, Deja Vu Consulting, Inc. n/k/a/ Pine Tree Assets, Inc.'s officers include Donald Krontz and George Couch.

21.     Defendant Deja Vu Services, Inc. is a Nevada Corporation. The registered office for Deja Vu Services, Inc.  is 701 S Carson St. Ste 200, Carson City, NV 89701.  From Las Vegas, Deja Vu Services, Inc. manages, operates and/or controls the business operation, employment, and wage policies at Deja Vu Nightclubs doing business under the "Deja Vu" trade names, "Deja Vu Showgirls," "Deja Vu Dream Girls," "Deja Vu Centerfolds," "Hustler Club," "Little Darlings", "Buck's Cabaret, "Club Rouge," "Pole Position," "Sam's After Dark," and/or other "Deja Vu" trade names nationwide, including the Deja Vu nightclub where Plaintiff and all class members work or worked.

22.     Upon information and belief, Deja Vu Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and/or Deja Vu  Services, Inc., along with the individual business entities

comprising the Deja Vu Nightclubs employ "consulting" agreements to allow Deja Vu Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and/or Deja Vu Services, Inc. to control, operate, direct, and manage the business affairs of Deja Vu Nightclubs, including those that affect dancer classification and table dance tip sharing policies.

23. At all relevant times Deja Vu Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and Deja Vu Services, Inc. employed all Dancers working in Deja Vu Nightclubs, managed, directed and controlled the operations in each Deja Vu Nightclub, and dictated the common employment policies applicable in each nightclub, including but not limited to the decisions to: (1) misclassify Dancers as independent contractors, as opposed to employees; (2) require Dancers to split their table dance tips with Defendants; (3) require Dancers to further split their table dance tips with Defendants' managers, doormen, floor walkers, DJ's and other employees who do not usually receive tips, by paying "tip-outs;" (4) not pay Dancers any wages; (5) demand improper and unlawful payments from class members; (6) adopt and implement employment policies that violate the FLSA and/or other wage and hour laws; and (7) threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee.

24. Defendant Las Vegas Bistro, LLC is a Nevada limited liability company with a registered office at the Corporation Trust Company of Nevada, 701 S Carson St. Ste 200, Carson City, NV 89701.

25. Defendant Dean Martin Dr. – Las Vegas, LLC, is a Nevada limited liability company with a registered office at the Corporation Trust Company of Nevada, 701 S Carson St. Ste 200, Carson City, NV 89701.

26. Defendant 2145 B Street, LLC, is a Nevada limited liability company with a registered office at the Corporation Trust Company of Nevada, 701 S Carson St. Ste 200, Carson City, NV 89701.

27. Defendant MIC Limited, a Michigan corporation with a registered office at the Corporation Trust Company of Nevada, 701 S Carson St. Ste 200, Carson City, NV 89701.

28. Defendant Deja Vu Entertainment Enterprises of Minnesota, Inc. is a Minnesota corporation with a registered office located at Deja Vu, 315 Washington Ave N, Minneapolis, MN 55401.

29. Defendant Deja Vu – Colorado Springs, Inc. is a Colorado corporation with a registered office located at 1530 1st Ave S, Suite A, Seattle, WA 98134.

30. All named Defendants agreed and conspired among themselves, as well as with any third-parties which own Deja Vu Nightclubs in the United States to: (1) misclassify Dancers as independent contractors, as opposed to employees; (2) require Dancers to split their table dance tips with Defendants; (3) require Dancers to further split their table dance tips with Defendants' managers, doormen, floor walkers, DJ's and other employees who do not usually receive tips, by paying "tip-outs;" (4) not pay Dancers any wages; (5) demand improper and unlawful payments from class members; (6) adopt and implement employment policies that violate the FLSA and other wage and hour laws; and (7) threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee.

31. Defendants knew or should have known that their business model was unlawful, because money that patrons give to Dancers and not taken into the employer's gross receipts is legally defined as a gratuity and the sole property of the dancer.

32. At all relevant times, Defendants owned and operated an enterprise engaged in interstate commerce and utilized goods which moved in interstate commerce, as defined in 29 U.S.C. §§ 203(r) and 203(s).

33. Defendants constitute an "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), because they perform related activities through common control for a common business purpose. At relevant times, Plaintiff and the Class were employed by Defendants, enterprises engaged in commerce within the meaning of 29 U.S.C. § 206(a) and § 207(a).

## IV.    FACTUAL BASIS

**A.    Defendants are Joint Employers of All Dancers In The Class.**

34. Harry Mohney entered into the exotic dance nightclub business in the mid-1980's when he purchased the original "Deja Vu" adult nightclub in Seattle, Washington.

Since that time Mohney has opened numerous other "Deja Vu" nightclubs in several states, either as owner (direct or indirect), manager or "consultant." The predominant business purpose of each Deja Vu Nightclub remains the same –to showcase exotic dancers for customers. The primarily business model at each nightclub also remains the same: to classify all exotic dancers working there as independent contractors, as opposed to employees; pay them no wages; but instead have the dancers actually pay the nightclub "rent" to work by splitting the money given to them by patrons with the nightclub. While the nightclubs also earn revenue by charging admission prices and selling beverages, the "rent" paid by the dancers remains one of, if not the primary source of revenue for the nightclubs.

35. For licensing and other legal reasons Harry Mohney has avoided holding the nightclubs and related adult businesses directly in his own name. As a result, he shifted his ownership interests to family members and associates such as Don Krontz, George Couch and Jason Mohney.[1] Despite this, Mohney and/or his son, Jason Mohney exercise the highest executive authority with respect to each of the Deja Vu Nightclubs.

36. Deja Vu. Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and/or Deja Vu Services, Inc., establish policies which confirm that they controls the workplace at all of the Deja Vu Nightclubs, including that pertaining to the classification of dancers and payment of wages.[2]

37. Each Deja Vu Nightclub has a common structure where it is held by a nominal corporation but all senior management, financial, legal, accounting and other critical functions are delegated, pursuant to common contracts, to centralized, affiliated companies (such as Deja

---

[1] *See AMW Inv. v. Commissioner*, 1996 WL 270942 (U.S. Tax Ct.)("As Mr. Mohney's business dealings evolved over time and he began to gain greater notoriety, his reputation as a proprietor of adult entertainment establishments preceded him and affected the future expansion of his business operations into new communities. Mr. Mohney decided to purchase property through nominees due to his concerns that he would encounter legal problems if he purchased property in his own name.").

[2] Upon information and belief all or most of services and function previously performed by Deja Vu Consulting Inc., are now performed by Déjà Vu Services, Inc. and/or Pine Tree Assets, Inc. and/or DDVL, Inc.

Vu Services, Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., Imagination Corp.[3],

Modern Bookkeeping Inc.[4], MIC, Ltd.[5], Dynamic Industries[6], the Durand Trust and/or DDVL,

Inc.) which all come under the common control of Harry Mohney, Krontz, Couch and/or Jason

Mohney.

     38.    Upon information and belief, each Deja Vu Nightclub has common "consulting"

and "licensing" contracts with Deja Vu, Inc. Deja Vu Services, Inc., Deja Vu Consulting, Inc.

n/k/a/ Pine Tree Assets, Inc. and/or other related entities. Through these contracts Deja Vu, Inc.

and Deja Vu Services, Inc. further exercise control over each Deja Vu Nightclub and the

dancers in the Class working there. Profits from the companies within the enterprise are

ultimately up-streamed to Harry Mohney and/or his children, directly or indirectly. None of the

transactions and dealings between the companies occur at arm's length. Rather, the companies

have common officers, directors and owners who deal amongst themselves while

simultaneously "wearing many hats."

---

[3]   Imagination Corp. is a company owned by Harry Mohney and/or the Harry V. Mohney Revocable Trust. Imagination holds the majority ownership of certain Déjà Vu Nightclubs. The officers of Imagination are Donald Krontz, Harry Mohney and his daughter, Mary Beth Mohney.

[4]   The Deja Vu nightclubs contract with Modern Bookkeeping, Inc. ("Modern") for financial, bookkeeping, payroll and other support services Modern Bookkeeping, Inc.'s stock is owned by Dynamic Industries. Most corporate records of Defendants are maintained at Modern and/or shared on a common computer system. *See U.S. v. Klien,* 19 F.3d 20 (6th Cir. 1994)(describing Modern Bookkeeping as "the nerve center for Harry Mohney's adult entertainment empire").

[5]   MIC, Ltd. ("MIC") is a company which owns and leases the building space which many Deja Vu Nightclubs operate out of. MIC is owned by Dynamic Industries and hence, by the Mohney family trust. *See Ellwest Stereo Theatres of Memphis, Inc. v. Commissioner of Internal Revenue,* 1995 WL 760499 at *2 (U.S. Tax Ct. 1996)(confirming that MIC, Ltd. was a company "owned, in whole or part, by Harry V. Mohney, either directly or indirectly as one of several beneficiaries of a trust" and The Durand Trusts also owned all the stock of Dynamic Industries Ltd., a domestic corporation of which M.I.C. Limited was the wholly owned subsidiary.")

[6]   Dynamic Industries holds stock in Deja Vu Consulting, Inc. n/k/a/ Pine Tree Assets, Inc, Modern and MIC. Upon information and belief, the Durand Trust holds ownership shares in Dynamic Industries. *See Ellwest Stereo v. Commissioner*. 1995 WL 760499.

**B.** **Defendants Have Dancers in the Class Execute Draconian and Unconscionable Contracts Which Purport to Have Them Contract Out of Employment Status.**

39.     Deja Vu, Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., and Deja Vu Services, Inc. and/or other Defendants require dancers to execute a standard form Dancer Performance Lease in order to work at a Deja Vu Nightclub.

40.     The Dancer Performance Lease is a draconian, unfair, oppressive, unconscionable and unenforceable contract.

41.     The Dancer Performance Lease purports to provide dancers in the Class an "option" to work as employees or independent contractors, but in reality there is no true choice. In turn, upon information and belief, no dancer has ever "elected" to work other than as an independent contractor at a Deja Vu Nightclub.

42.      Through the Dancer Performance Lease Defendants attempt to (a) penalize dancers for exercising their rights under the FLSA and state wage and hour laws and (b) coerce dancers in the Class to waive their rights under the FLSA and state wage and hour laws by labeling their relationship as that as that of an independent contractor instead of as an employee.

43.     Courts, including the United States Supreme Court, have repeatedly held that the subjective intentions of the parties, labels placed on the workers, or contractual agreements are irrelevant to the determination of whether a worker is actually an "employee" covered by the FLSA and wage and hour laws. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727, 67 S.Ct. 1473, 1476 (1947), *citing Walling v. American Needlecrafts*, 139 F.2d 60 (6th Cir. 1943) ("Where the work done, in its essence, follows the usual path of an employee, putting on an independent contractor label does not take the worker from the protection of the Act."). Rather, whether a worker is an employee or not is governed by the economic realities test.

44.     As Courts have further explained, the FLSA and state wage and hour laws are designed to defeat rather than implement contractual arrangements that attempt to have workers waive or contract out of their rights as employees. *See, e.g.*, *Imars v. Contractors Mfg. Servs., Inc.*, 165 F.3d 27, 1998 WL 598778 at *5 (6th Cir., 1998)("We agree that it makes

very good sense to reject contractual intention as a dispositive consideration in our analysis. The reason is simple: 'The FLSA is designed to defeat rather than implement contractual arrangements.' [*Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1544-455 (7th Cir.1987)(Easterbrook J., concurring)]; *see also Real v. Driscoll Strawberry Assoc.*, 603 F.2d 748, 755 (9th Cir.1979) ('Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA.'). The FLSA represents the New Deal's rejection of *Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539 (1905), and its doctrine of freedom of contract. Even if employees freely want to work for below the minimum wage, or work in statutorily banned work conditions, or work long hours without extra compensation - even if their choices are moral and economically efficient - the FLSA does not allow this. This is true even when the bargaining is done at arm's length.").

45.     Applying the actual economic reality test that governs employee / independent contractor determinations, all dancers in the Class have been misclassified as independent contractors.

**C.     Under The Economic Realities Test All Dancers In The Class Have Been Misclassified As Independent Contractors**.

46.     The FLSA applied to Plaintiff and the Class at all times in which they worked at the Deja Vu Nightclubs, because Defendants employed Plaintiff and each member of the Class under the FLSA and other applicable law.

47.     At all relevant times, Plaintiff and each member of the Class were employees of Defendants under the FLSA and applicable state wage and hour laws.

48.     No exceptions to the application of the FLSA or state wage and hour laws apply to Plaintiff or the Class. For example, no class member has ever been a professional or artist exempt from the provisions of federal or state employment statutes. The exotic dancing performed by class members while working at Deja Vu Nightclubs does not require invention, imagination or talent in a recognized field of artistic endeavor, and Defendants never compensated class members on a set salary, wage, or fee basis.

49.     Class members' sole source of income while working at the Deja Vu Nightclubs was tips that patrons provided in exchange for table and stage dances.

50.     At all relevant times, Defendants were employers of all class members under the FLSA and applicable state wage and hour laws. Defendants suffered or permitted class members to work and, directly or indirectly, exercised significant control over the wages, hours, and working conditions of the Dancers in the Class.

51.     At all relevant times, Defendants were joint employers of Plaintiff and all class members under the FLSA and applicable state wage and hour laws. As joint employers of Plaintiff and members of the Class, Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA and other applicable wage and hour laws. 29 C.F.R. § 791.2(a) and (b).

52.     At all relevant times, the employment terms, conditions and policies that applied to Plaintiff were materially the same as those that applied to the other class members who worked as Dancers at Deja Vu Nightclubs.

53.     Although the total number of class members is at this time unknown, it is estimated that hundreds of women worked as exotic Dancers at Deja Vu Nightclubs without being paid minimum wages or receiving the rights and benefits of an employee during the relevant time period.

54.     At all relevant times, Defendants' policies and procedures regarding the classification and treatment of class members, including Plaintiff, were the same.

55.     As a matter of common business policy, Defendants systematically misclassified Plaintiff and all class members as independent contractors, as opposed to employees.

56.     Defendants' classification of Plaintiff and class members as independent contractors was not due to any unique factor related to their employment or relationship with Defendants.

57.     Plaintiff and members of the Class incurred financial loss, injury and damage as a result of Defendants' common practice of misclassifying them as independent contractors and failing to pay them minimum wages.

58.     Plaintiff and members of the Class incurred financial loss, injury and damages as a result of Defendants' common practice to require class members to share tips with Defendants and other employees.

59.     During the relevant time period, no class members received any wages or other compensation from Defendants. Members of the Class generated their income solely through tips they received from customers when they performed exotic table, chair, couch, lap and/or VIP room dances (collectively referred to herein as "table dance tips").

60.     All money that Dancers received from customers constituted tips, not wages or service fees.

61.     Table dance tips belong to the person to whom they are given. Patrons gave tips directly to Dancers and, therefore, the tips belong to Dancers, not Defendants.

62.     Defendants' (or any Deja Vu Nightclub's) gross receipts do not take into account the full amount of table dance tips that patrons give Dancers. Defendants (or any Deja Vu Nightclub's) do not issue W-2 forms, 1099 forms, or any other documents to Dancers in the Class indicating any amounts being paid from their gross receipts to class members as wages.

63.     Dancers are tipped employees, because they are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips and no tip credits offsetting any minimum wages apply.

64.     As employees of Defendants, all Dancers in the Class are entitled to: (1) receive the full minimum wages due, without any tip credit, reduction or other offset, and (2) retain the full amount of any table dance tips and monies given to them from customers when they perform exotic dances.

65.     Defendants' misclassification of Dancers as independent contractors denied Plaintiff and all other class members their fundamental rights as employees to receive

minimum wages and retain their tips in order to enhance Defendants' profits at the expense of the Class.

66. Employment is defined with "striking breadth" in the wage and hour laws. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325-26 (1992). The determining factor as to whether Dancers like Plaintiff are employees or independent contractors under FLSA is not the dancer's election, subjective intent or any contract. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment in others. In *Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951 (Nev. 2014), the Supreme Court of Nevada applied the economic reality test and reasoned, "…this court is in accord with the weight of authority, which has almost "without exception … found an employment relationship and required … nightclub[s] to pay [their] dancers a minimum wage." *Id.* (citing *Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326, 1343 (N.D. Ga. 2011)).

67. Any contract that attempts to have workers in the Class waive, limit, or abridge their statutory rights to be treated as an employee under FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable and contrary to public policy. *See Morris v. Ernst & Young, LLP*, No. 13-16599, 2016 WL 4433080, at *1 (9th Cir. Aug. 22, 2016) (finding that arbitration clauses in the FLSA context violate the NLRA and interfere with employees' right to engage in concerted activities for mutual aid and protection). Workers in the Class cannot validly "elect" to be treated as independent contractors or waive the right to engage in concerted activity under threat of adverse treatment. Nor can workers in the Class agree to be paid less than the minimum wage.

68. "Particularly where, as here, remedial statutes are in play, a putative employer's self-interested disclaimers of any intent to hire cannot control the realities of an employment relationship." *Terry v. Sapphire Gentlemen's Club*, 130 Nev. Adv. Op. 87, 336 P.3d 951, 954 (2014), *reh'g denied* (Jan. 22, 2015), *citing Rutherford Food Corp. v. McComb*, 331 U.S. 722,

729, 67 S.Ct. 1473 (1947); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir.1979); *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir.1968).

69.     Defendants unfairly, unlawfully, fraudulently and unconscionably attempted to coerce Dancers to waive their statutory rights and elect to be treated as independent contractors. Defendants threatened to penalize and discriminate against Dancers if they asserted their statutory rights through termination, confiscation of all table dance tips, or other retaliation. Any such retaliation based on the assertion of statutory rights under the wage and hour laws is unlawful. 29 U.S.C. § 215(a)(3).

70.     Defendants' misclassification of Dancers, including Plaintiff and all class members, was willful. Defendants knew or should have known that Plaintiff and the other Dancers performing the same job functions were improperly misclassified as independent contractors.

71.     Plaintiff and class members are employees rather than independent contractors because, as a matter of economic reality, they are economically dependent on Defendants as their employer.

72.     Under the economic reality test, courts utilize several factors to determine economic dependence and employment status. They are: (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

73.     The totality of circumstances surrounding the employment relationship between Defendants and the Dancers in the Class establish that class members, including Plaintiff, were economically dependent on Defendants.

74.     As a matter of economic reality, Plaintiff and all other class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Defendants. The Dancers are not engaged in occupations

or businesses distinct from that of Defendants. Rather, their work is the basis for Defendants' business and Defendants prohibit Dancers from working at other venues. Defendants obtain the customers who desire exotic dance entertainment and provide the workers who conduct the exotic dance services on behalf of Defendants. Defendants retain pervasive control over the nightclub operation as a whole, and the dancer's duties are an integral part of the operation.

### A.     Degree of Control

75.     Dancers do not exert control over a meaningful part of Deja Vu Nightclubs and do not stand as separate economic entities from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiff and the other Dancers in the nightclubs.

76.     Dancers' economic status is inextricably linked to those conditions over which Defendants have complete control. Dancers are completely dependent on Defendants for their earnings. Defendants control all the advertising and promotion without which Dancers could not survive economically. Moreover, Defendants create and control the atmosphere and surroundings at the Deja Vu Nightclubs, the existence of which dictates the flow of customers into the club. Dancers have no control over the customer volume or the atmosphere at Deja Vu Nightclubs.

77.     Defendants employ guidelines and rules dictating the way in which Dancers must conduct themselves while working at Deja Vu Nightclubs. Defendants set the hours of operation; length of Dancers' shifts; show times during which Dancers may perform; minimum table dance tips; sequence in which Dancers perform on stage; format and themes of Dancers' performances (including their costuming and appearances); theme nights; conduct while at work (i.e., that they be on the floor as much as possible when not on stage and mingle with patrons in a manner which supports Defendants' general business plan); pay tip-splits; pay "tip-outs" to employees who do not normally receive tips from patrons; require Dancers to help sell drinks or "Deja Vu" branded novelties to patrons; and all other terms and conditions of Dancers' employment.

78.     Defendants require Dancers to schedule work shifts of no less than one hour. Further, Defendants require Dancers to clock-in and clock-out (or otherwise check in or report)

at the beginning and end of each shift. If late or absent for a shift, Dancers are subject to a fine, penalty, or reprimand. Once a shift starts, Dancers are required to complete the shift and cannot leave early without penalty or reprimand.

79. Defendants impose other rules on Dancers such as those restricting smoking breaks, the length of breaks, how many Dancers can take such breaks at a time, and their ability to work at competing nightclubs.

80. While working at Deja Vu Nightclubs, Dancers perform exotic table, chair, couch, lap and/or VIP room dances for patrons. In exchange, patrons provide Dancers with tips. Defendants, not Dancers, set the minimum tip amount that Dancers must collect from patrons when performing exotic dances. Defendants announce the minimum tip amounts directly to patrons.

81. Defendants dictate the manner and procedure in which table dance tips are collected from customers and tracked. Each time Dancers perform an exotic table dance for a patron and receive a table dance tip, they are required to report their time and tips to Defendants. Additionally, Defendants employ other employees called "checkers," doormen and/or floor walkers to monitor Dancers, count the number of private dances they perform, and record the amount of any table dance tips the Dancers receive. At the end of a work shift, Defendants require Dancers to clock out and account for all dances performed for patrons.

82. Defendants require Dancers to pay a portion of each table dance tip they receive to Defendants as "rent." The rent payment typically exceeds 30% of each table dance tip. Alternatively, in clubs where rent is not collected on a per dance basis, the base "rent," the dancer must pay the nightclub at the end of a shift is higher and funded through tip-splits.

83. Defendants do not incorporate the entire sum that Dancers receive into their gross receipts. Rather, Dancers keep their share of the payment under the tip share policy and only pay Defendants the portion they demand as "rent" (e.g. $7 from each $20 table dance tip received). Thus, Defendants do not pay Dancers any wages and do not issue 1099 forms, W-2 forms or other documents demonstrating a dancer's wage.

84.     Defendants establish the split or percentage that each dancer is required to pay for each tip they receive from a dance. In addition, Dancers must pay per-dance amounts or "tip-outs" (e.g. approx. $1 for each dance) to the nightclub manager, dance checkers, disk-jockey, bouncers/door staff and/or other employees as part of Defendants' tip-splitting policy. Dancers are also required to help sell goods (such as t-shirts, videos or hats) bearing the Deja Vu logo to patrons as part of their job duties performing table dances. As part of these "special" dances, goods are sold as a package with a table dance.

85.     The foregoing establishes that Defendants control and set the terms and conditions of a Dancer's work. This is the hallmark of economic dependence and control.

**B.      *Skill and Initiative of a Person in Business for Themselves***

86.     Dancers, like Plaintiff, do not exercise the skill and initiative of a person in business for themselves.

87.     Defendants do not require Dancers, like Plaintiff, to have any specialized or unusual skills to work at Deja Vu Nightclubs. Prior dance experience is not required to perform at Deja Vu Nightclubs. Defendants do not require dance seminars, specialized training, instruction, or choreography for Dancers to work at Deja Vu Nightclubs. The dance skills utilized are commensurate with those exercised by ordinary people.

88.     Dancers, like Plaintiff, do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors. Dancers do not own an enterprise; exercise business management skills; maintain separate business structures or facilities; exercise control over customer volume; actively participate in efforts to increase the nightclub's client base; or establish contracting possibilities.

89.     The scope of a Dancer's initiative is restricted to decisions involving what clothes to wear (within Defendants' guidelines) or how provocatively to dance.

90.     Dancers, like Plaintiff, are not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons and increase their revenues.

### C.    Relative Investment

91.    A dancer's relative investment is minor when compared to the Defendants' investment.

92.    Dancers, like Plaintiff, make no capital investment in a Deja Vu Nightclub's advertising, maintenance, sound system, lighting, food, beverage, or staffing. Defendants provide all investment and risk capital. Dancers' investments are limited to expenditures on costumes and make-up, which they may choose to wear while working, and their own labor. But for Defendants' provision of the lavish nightclub work environment, Dancers would earn nothing.

### D.    Opportunity for Profit and Loss

93.    Defendants, not Dancers, manage all aspects of the business operation including attracting investors, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, bouncers/doormen, etc.). Defendants, not Dancers, take the true business risks for Deja Vu Nightclubs. Defendants, not Dancers, are responsible for providing the capital necessary to open, operate and expand the businesses.

94.    Dancers, like Plaintiff, do not control the key determinants of profit and loss of a successful enterprise. Specifically, Dancers are not responsible for any aspect of the enterprise's ongoing business risk.

95.    Defendants, not Dancers, are responsible for financing, acquiring and/or leasing the physical facilities, equipment, inventory, payment of wages (for managers, bartenders, doormen, and waitresses), and obtaining all appropriate business insurance and licenses. Defendants, not the Dancers, establish the minimum table dance tip amounts that should be collected from patrons when dancing.

96.    With respect to any "rent" payments, Dancers do not truly pay the Club's "rent" for the exclusive use of space. Rather, the term "rent" is a misnomer or subterfuge for tip-splitting. In reality, Defendants simply demand a set portion (approx. 35%) of each table dance tip patrons give Dancers.

97.    The extent of the risk that Dancers, like Plaintiff, face is the loss of any "base rent" fee due to Defendants when the employee clocks out after each shift. Defendants, not Dancers, shoulder the risk of loss. The table dance tips that Dancers receive are not a return for risk on capital investment; they are a gratitude for services rendered. From this perspective, a Dancer's "return on investment" (e.g. table dance tips) is no different than that of a waiter who serves food during a customer's meal at a restaurant.

### E.    Permanency

98.    Certain class members have worked at Deja Vu nightclubs significant periods of time.

### F.    Integral Part of Employer's Business

99.    Dancers, like Plaintiff, are essential to the success of the Deja Vu Nightclubs, which depend on the Dancers' exotic performances for patrons. In fact, the primary reason the nightclubs exist is to showcase the Dancers' physical attributes for customers. The primary "product," "good" or "service" that Defendants sell patrons are lap dances, table dances and VIP room dances performed by Dancers.

100.   Defendants recruit Dancers to work in their clubs and provide instructions on how to work at Deja Vu Nightclubs.

101.   The dejaVu.com website has a common "entertainer" application, along with an uploaded picture, that can be submitted to dejaVu.com to evaluate. http://dejaVu.com/contact-us/entertainer-opportunities/. ("Interested in becoming a showgirl? Fill out the form below, or go to the club you wish to be an entertainer at and ask to see a manager. This application is for Entertainers only; all other positions click here for application.")

102.   Many Deja Vu nightclubs do not serve alcohol and, therefore, are not truly in direct competition with other enterprises in the nightclub, tavern or bar industry. Without exotic dances, a nightclub serving only non-alcoholic beverages would have difficulty remaining in business. Moreover, Defendants are able to charge admission prices and a much higher price for their drinks (e.g. $10 for soft drinks and/or drink minimums) than

establishments without Dancers, because Dancers are the main attraction at Deja Vu Nightclubs. Additionally, Dancers sell Defendants' beverages and/or novelties to customers.

103. The foregoing demonstrates that Dancers, including Plaintiff and all other class members, are economically dependent on Defendants and subject to Defendants' control. Defendants, therefore, misclassified Plaintiff and all class members as independent contractors and should have been paid no less than minimum wages at all times they worked at any Deja Vu Nightclub and otherwise been afforded all rights and benefits of an employee under federal and state wage and hour laws. *See Terry v. Sapphire Gentlemen's Club*, 130 Nev. Adv. Op. 87, 336 P.3d 951, 960 (2014), *reh'g denied* (Jan. 22, 2015) (finding that nude dancers are useful and necessary to the operation of a business billing itself as an adult nightclub).

## V.     DEFENDANTS' INTENT

104. All of Defendants' actions and agreements described herein were willful, intentional, and not the result of mistake or inadvertence.

105. Defendants were aware that the FLSA and state wage and hour laws applied to their operation of the Deja Vu Nightclubs.

106. Defendants were aware that, at all relevant times, their Dancers were misclassified as independent contractors.

107. Defendants were aware of and/or the subject of previous litigation and enforcement actions related to wage and hour law violations where the misclassification of exotic Dancers as independent contractors was challenged. In the clear majority of those prior cases, exotic Dancers working under conditions like those employed at Deja Vu Nightclubs were determined to be employees under the wage and hour laws, not independent contractors. *See Verma v. 3001 Castor, Inc.*, 2014 WL 2957453, at *16 ("For the preceding reasons, because I find that the dancers are employees, I deny Defendant's motion for summary judgment.") and footnote 5 ("Before embarking on an examination of how the factors identified in the economic realities test apply to the undisputed facts here, I note that faced with similar factual records, "nearly without exception, [ ] courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage." *Hart v. Rick's Cabaret Int'l,*

*Inc.,* 967 F. Supp. 2d 901, 912–13 (S.D.N.Y.2013) (citing *Harrell v. Diamond A Entm't Inc.,* 992 F.Supp. 1343, 1348 (M.D.Fla.1997)) (*see Reich v. Circle C. Invs., Inc.,* 998 F.2d 324, 329 (5th Cir.1993); *Stevenson v. Great Am. Dream, Inc.,* No. 12–3359, 2013 WL 6880921 at *4–6 (N.D. Ga. Dec.31, 2013); *Thornton v. Crazy Horse, Inc.,* No. 06–0251, 2012 WL 2175753, at *15 (D. Alaska June 14, 2012); *Clincy v. Galardi S. Enters., Inc.,* 808 F. Supp. 2d 1326, 1343 (N.D.Ga.2011); *Thompson,* 779 F. Supp. 2d at 151; *Morse v. Mer Corp.,* No. 08–1389, 2010 WL 2346334, at *6 (S.D. Ind. 2010); *Reich v. Priba Corp.,* 890 F.Supp. 586, 594 (N.D. Tex. 1995)). *Cf. Matson v. 7455, Inc.,* No. 98–788, 2000 WL 1132110, at *4 (D. Or. Jan.14, 2000); *Hilborn v. Prime Time Club, Inc.,* No. 11–00197, 2012 WL 9187581, at *1 (E.D. Ark. July 12, 2012).")

108.   Defendants were aware, and on actual or constructive notice, that applicable law rendered all table dance tips that patrons gave Dancers as the Dancers' sole property, rendering Defendants' tip-share, rent and tip-out polices unlawful.

109.   Despite being on notice of their violations, Defendants intentionally chose to continue to misclassify Dancers, withhold payment of minimum wages, and require Dancers to split their tips with Defendants and their employees to enhance their profits. Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

## VI.    INJURY AND DAMAGE

110.   Plaintiff and all class members suffered injury, were harmed, incurred damage, and financial loss because of Defendants' conduct complained of herein. Among other things, Plaintiff and the Class were entitled to minimum wages and to retain all the table dance tips and other tips they were given by patrons.

111.   By failing to pay Plaintiff and the Class minimum wages and interfering with their right to retain all the table dance tips and other tips they were given by patrons, Defendants injured Plaintiff and all class members and caused them financial loss, harm, injury and damage.

## VII. COLLECTIVE ACTION ALLEGATIONS

112. Plaintiff brings Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf of themselves and all similarly situated individuals. The proposed FLSA Collective Class is defined as:

> All individuals who, at any time from the date three years prior to the date the Complaint is originally filed, through the present (or the applicable statute of limitations for any of the pending lawsuits, whichever is longer), worked as an exotic dancer at a Deja Vu Nightclub in the United States and were not paid minimum wages.
>
> (Referred to herein as the "Collective Class").

Plaintiff reserves the right to modify this definition prior to conditional certification of the FLSA Collective Class.

113. Plaintiff has consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b).

114. Plaintiff and members of the Collective Class are similarly situated in that they are/were Dancers at Deja Vu Nightclub, have/had substantially similar job requirements, pay provisions, and are/were subject to Defendants' pervasive right to control their daily job functions.

115. Defendants misclassified Plaintiff and Collective Class members as independent contractors, rather than employees, and did not pay Plaintiff or Collective Class members the minimum wage required under state and federal laws.

116. Defendants engaged in unlawful tip sharing by requiring Plaintiff and Collective Class members to share monies that they received from patrons with Defendants and Defendants' other employees.

117. Defendants' conduct, as set forth in this Complaint, was willful and caused Plaintiff and all Collective Class members significant damages and financial loss.

118.    Defendants are liable under the FLSA for failing to properly compensate Plaintiff and all Collective Class members. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## VIII.    CLASS ACTION ALLEGATIONS

119.    Plaintiff brings Count Five of this Complaint as a national class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "Rule 23 Class" defined as follows:

> All individuals who, at any time from the date four years prior to the date the Complaint is originally filed, through the present (or the applicable statute of limitations for any of the pending lawsuits, whichever is longer), worked as an exotic dancer at a Deja Vu Nightclub in the United States and were not paid any minimum wages.
>
> (Referred to herein as the "Class").

120.    Plaintiff brings Counts Two of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "Rule 23 Class" defined as follows:

> All individuals who, at any time from the date four years prior to the date the Complaint is originally filed, through the present (or the applicable statute of limitations for any of the pending lawsuits, whichever is longer), worked as an exotic dancer at a Deja Vu Nightclub in the state of Nevada and were not paid any minimum wages.
>
> (Referred to herein as the "Nevada Subclass").

121.    Plaintiff brings Count Three of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "Rule 23 Class" defined as follows:

> All individuals who, at any time from the date three years prior to the date the Complaint is originally filed, through the present (or the applicable statute of limitations for any of the pending lawsuits, whichever is longer), worked as an exotic dancer at a Deja Vu Nightclub in the State of Minnesota and not paid any minimum wages.

(Referred to herein as the "Minnesota Subclass").

122.    Plaintiff brings Count Four of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "Rule 23 Class" defined as follows:

All individuals who, at any time from the date three years prior to the date the Complaint is originally filed, through the present (or the applicable statute of limitations for any of the pending lawsuits, whichever is longer), worked as an exotic dancer at a Deja Vu Nightclub in the State of Colorado and not paid any minimum wages.

 (Referred to herein as the "Colorado Subclass").

123.    Numerosity: The individuals in the Class and each Subclass are so numerous that joinder of all members is impracticable. The precise number of members each Subclass is unknown to Plaintiff, but the number greatly exceeds the number that would make joinder practicable. The number of individuals who have worked as Dancers at each of the Deja Vu Nightclubs during the relevant time period but who were not paid any minimum wages exceeds 500 women.

124.    Commonality: Questions of law and fact common to Collective Class and each Subclass predominate over any questionsj solely affecting individual members, including, but not limited to:

a.    whether Defendants violated the FLSA other applicable wage and hour laws by classifying all exotic Dancers at Deja Vu Nightclubs as "independent contractors," as opposed to employees, and not paying them minimum wages;

b.    whether the monies patrons gave Dancers in exchange for table dances were gratuities;

c.    whose property did the monies given to Dancers belong when Dancers performed table dances;

d.    whether Defendants unlawfully required class members to split their tips with Defendants and Defendants' employees;

e.    whether Defendants are joint employers of the Dancers in the Class;

f.     whether Defendants and certain third parties agreed and conspired to deny class members their rights under the wage and hour laws;

g.     whether Defendants failed to keep required employment records;

h.     whether Defendants engaged in unlawful acts by classifying all Dancers at Deja Vu Nightclubs as "independent contractors" as opposed to employees, not paying them any minimum wages, splitting their tips, and threatening to terminate or penalize Dancers for exercising their statutory rights; and

i.     the amount of damages, restitution, and/or other relief (including all applicable civil penalties, liquidated damages and equitable relief) available which Plaintiff and the Class are entitled to.

125.   Typicality: Plaintiff's claims are typical of those of the Class and each Subclass member, like other members of the Class and each Subclass, was misclassified as an independent contractor and denied her legal rights to wages and to keep her gratuities. Plaintiff's misclassification resulted from the implementation of a common business practice which affected all class members in a similar way. Plaintiff challenges Defendants' business practices under legal theories common to all class members.

126.   Adequacy: Plaintiff and the undersigned counsel are adequate representatives of the Class. Plaintiff is a member of the Class and each Subclass. Given Plaintiff's injuries and losses, Plaintiff has the incentive and is committed to the prosecution of this action for the benefit of the Class and each Subclass. Plaintiff has no interests that are antagonistic to those of the Class and each Subclass or that would cause her to act adversely to the best interests of the other class members. Plaintiff has retained counsel experienced in class action litigation, including wage and hour disputes.

127.   Superiority: This action is maintainable as a class action, because the prosecution of separate actions by individual members of the Class and each Subclass would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and each Subclass which would establish incompatible standards of conduct for Defendants.

128.    Predominance: This action is maintainable as a class action because questions of law and fact common to the Class and each Subclass predominate over any questions affecting only individual members of the Class and each Subclass, and because a class action is superior to other methods for the fair and efficient adjudication of this action.

## COUNT ONE

### VIOLATION OF THE FLSA

#### (Failure to Pay Statutory Minimum Wages)

(Brought by Plaintiff on behalf of themselves and the FLSA Collective Class)

129.    Plaintiff re-alleges all preceding paragraphs of this Complaint, as if fully set forth herein.

130.    At all relevant times, Defendants jointly employed Plaintiff and all Collective Class members within the meaning of the FLSA.

131.    29 U.S.C. § 206 requires that Defendants pay all employees minimum wages for all hours worked. 29 U.S.C. § 206(a) provides in pertinent part:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) except as otherwise provided in this section, not less than--

(A) $5.85 an hour, beginning on the 60th day after May 25, 2007;

(B) $6.55 an hour, beginning 12 months after that 60th day; and

(C) $7.25 an hour, beginning 24 months after that 60th day;

132.    29 U.S.C. § 207(a) provides in pertinent part:

…no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives

compensation for his employment in excess of the hours above specified at a rate

of not less than one and one-half times the regular rate at which he is employed.

133. Defendants failed to pay Dancers working at the Deja Vu Nightclubs, including Plaintiff, the minimum wages set forth in 29 U.S.C. § 206 or § 207, or any wages whatsoever. In fact, Defendants required that Dancers, including Plaintiff, pay them in order to work.

134. Defendants failed to pay Dancers, including Plaintiff, minimum wages throughout the relevant time period, because they misclassified Plaintiff and all Collective Class members as independent contractors.

135. The amounts Defendants' patrons paid to Dancers, including Plaintiff and all Collective Class members, in relation to private table dances performed were tips, not wages. Those monies were not the property of Defendants and were not made part of any of Defendants' gross receipts.

136. As a result, the amounts customers paid Dancers, like Plaintiff, were tips, not wages or service fees, and no part of those amounts can be used to offset Defendants' obligation to pay Plaintiff or Collective Class members minimum wages. *See e.g., Terry v. Sapphire*, 336 P.3d at 956 (Nev. 2014) (*citing Dancer I–VII v. Golden Coin, Ltd.*, 176 P.3d 271, 274–75 (Nev. 2008) (finding that "… Nevada law excluded tips from the calculation of an employee's minimum wages —contrary to the rule under the FLSA—because the language of the relevant statutes was entirely conflicting." (citations omitted)).

137. Further, no tip credit applies to reduce or offset any minimum wages due. The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m), and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m) (emphasis added).

138. Defendants did not inform Dancers, like Plaintiff, of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m), and Plaintiff did not retain all the tips received except those

tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. §
203(m).

139.    Defendants never notified Dancers like Plaintiff that their table dance tips were
being used to reduce the minimum wages otherwise due under FLSA's tip-credit provisions
and that they were still due the reduced minimum wage for tipped employees. Rather,
Defendants maintained that no Dancers were ever due any minimum wages as a result to their
classification as independent contractors.

140.    Defendants' requirement that Dancers, including Plaintiff, split their tips and (1)
pay Defendants a portion of all table dance tips as "rent"; and (2) pay a percentage of their tips
as "tip-outs" to other employees who do not customarily receive tips, such as managers,
checkers, disc-jockeys and bouncers/doormen/floor walkers, was not part of a valid tip pooling
or tip sharing arrangement.

141.    Based on the foregoing, Plaintiff and the members of the Collective Class are
entitled to the full statutory minimum wages set forth in 29 U.S.C. §§ 206 and 207 for all
periods in which they worked at Deja Vu Nightclubs, along with all applicable penalties,
liquidated damages, and other relief.

142.    Defendants' conduct in misclassifying Dancers, including Plaintiff, as
independent contractors was intentional and willful and done to avoid paying minimum wages
and the other benefits that they were legally entitled to.

143.    The FLSA provides that a private civil action may be brought for the payment of
federal minimum wages and for an equal amount in liquidated damages in any court of
competent jurisdiction by an employee under 29 U.S.C. § 216(b) ("Any employer who violates
the provisions of section 206 or section 207 of this title shall be liable to the employee or
employees affected in the amount of their unpaid minimum wages, or their unpaid overtime
compensation, as the case may be, and in an additional equal amount as liquidated damages.").
Moreover, Plaintiff may recover attorneys' fees and costs incurred in enforcing their rights
pursuant to 29 U.S.C. § 216(b).

144. 12 U.S.C. § 211(c) provides in pertinent part:

(c) Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

145. 29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require employers to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

146. 29 U.S.C. § 215(a)(5) provides in pertinent part:

[I]t shall be unlawful for any person — (5) to violate any of the provisions of section 211(c) of this title...

147. To the extent Defendants failed to maintain all records required by the statutes and regulations, and failed to furnish Plaintiff comprehensive statements showing the hours that they worked during the relevant time period, it also violated the aforementioned laws causing Plaintiff damage.

148. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 66 S.Ct. 1187 (1946) is controlling. That rule states:

...where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the

precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

149. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." *Id.*

150. Plaintiff, on behalf of all Collective Class members, seeks unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-splits, liquidated damages, prejudgment interest calculated at the highest legal rate, attorneys' fees and costs, and all other costs, penalties and other relief allowed by law.

**COUNT TWO**

**VIOLATION OF THE NEVADA WAGE AND HOUR LAW, N.R.S. § 608.005 *et seq.***

**(Failure to Pay Minimum Wages)**

**(Against Defendants Deja Vu, Inc., Deja Vu Consulting, Inc., n/k/a/ Pine Tree Assets, Inc., Deja Vu Services, Inc., Dean Martin Dr – Las Vegas LLC, Las Vegas Bistro, LLC, and 2145 B Street, LLC)**

151. Plaintiff re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

152. Plaintiff brings this action individually and on behalf of both the Nevada Subclass.

153. At all relevant times, Plaintiff and members of the Nevada Subclass were employees of the Defendants within the meaning of N.R.S. § 608.010.

154.    At all relevant times, Defendants were the employers of all members of the Nevada Subclass within the meaning of N.R.S. § 608.011.

155.    The Nevada Wage and Hour Law requires that all employees be paid minimum wages by their employers.  N.R.S. §§ 608.016, 608.100, 608.140, 608.170, 608.190, 608.250-608.290.

156.    The Nevada Wage and Hour Law provides for higher hourly minimum wages than the FLSA.  Therefore, that wage applies to all members of the Nevada Subclass.  29 U.S.C. § 218(a).  As of July 1, 2016, the minimum wage in Nevada is $8.25 per hour.

157.    Nevada law does not allow for any reduction or offset in any minimum wages based on tips received.  N.R.S. § 608.160(1)(b).  Further, employers cannot take any portion of an employee's tips.

158.    Any agreement between an employee and an employer to receive less than the minimum wage is invalid.

159.    Employers must pay premium or overtime rates when employees work beyond specific daily or weekly limits.  For example, Nevada law provides that employees shall receive compensation of not less than 1 ½ times the regular rate for employment in excess of 8 hours per day or 40 hours per week.

160.    By requiring class members to share their tips (e.g., table dance tips) with Defendants and/or their employees (tip-outs), Defendants violated Nevada law.

161.    Defendants failed to pay Plaintiff and the Nevada Subclass any minimum wages for their labor during the relevant time period in violation of Nevada law.  All unpaid minimum and overtime wages must now be paid to the Nevada Subclass.

162.    All amounts paid to members of the Nevada Subclass by customers in relation to dances performed were tips, not wages or service fees and cannot be used to offset Defendants' obligations to pay minimum and overtime wages.

163.    Based on the foregoing, all members of the Nevada Subclass were injured, damaged, and incurred financial loss.

164. By failing to maintain employment records under the FLSA and/or other applicable wage and hour laws, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the N.R.S. § 608.115. By failing to maintain employment records, Defendants injured the members of the Nevada Subclass and caused damages.

165. By reason of the foregoing and pursuant to N.R.S. § 608.260, Plaintiff and each member of the Nevada Subclass are entitled to recover from Defendants unpaid minimum wages, unpaid overtime wages, backpay, liquidated damages if available, injunctive relief, declaratory relief, prejudgment interest, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

**COUNT THREE**

**VIOLATION OF MINN. STAT. § 177.23 *et seq.***

**(Violations of Minnesota's Fair Labor Standards Act)**

**(Against Defendants Deja Vu, Inc., Deja Vu Consulting, Inc., n/k/a/ Pine Tree Assets, Inc., Deja Vu Services, Inc., MIC Limited, and Deja Vu Entertainment Enterprises of Minnesota, Inc.)**

166. Plaintiff re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

167. Plaintiff brings this action individually and on behalf of the Minnesota Subclass.

168. At all relevant times, Plaintiff and members of the Minnesota Subclass were employees of the Defendants within the meaning of Minnesota state wage and hour laws mandating the payment of minimum wages, including the Minnesota Fair Labor Standard Act, Minn. Stat. § 177.23 *et seq.*

169. At all relevant times, Defendants were the employers of Plaintiff and all members of the Minnesota Subclass within the meaning of Minnesota state wage and hour laws, including the Minnesota Fair Labor Standard Act, Minn. Stat. § 177.23 *et seq.*

170. Defendants were joint employers of Plaintiff and the Minnesota Subclass, along with any other nominal owners of Deja Vu Nightclubs where the Dancers in the Class worked.

171. Defendants failed to pay Plaintiff and the Minnesota Subclass any minimum wages for their labor during the relevant time period in violation of Minnesota law. All unpaid minimum and overtime wages must now be paid to the Class along with other relief appropriate under the circumstances.

172. The Minnesota Fair Labor Standards Act requires that all employees be paid minimum wages by their employers. Minn. Stat. §§ 177.21-177.35.

173. The Minnesota Fair Labor Standards Act provides for higher hourly minimum wages than FLSA. Therefore, that wage applies to all members of the Minnesota Subclass. 29 U.S.C. § 218(a). As of August 1, 2016, the minimum wage in Minnesota is $9.50 per hour for large employers whose annual gross volume of sales made or business done is not less than $500,000.

174. Minnesota law does not allow for any reduction or offset in any minimum wages based on tips received. Minn. Stat. § 177.24 subd. 2. Further, employers cannot take any portion of an employee's tips. Minn. Stat. § 177.24 subd. 3.

175. All amounts paid to members of the Minnesota Subclass by customers in relation to dances performed were tips, not wages or service fees and cannot be used to offset Defendants' obligation to pay minimum and overtime wages.

176. Defendants' conduct requiring class members to split their tips and pay "rent" constituted unlawful tip splitting, which injured Minnesota Subclass members.

177. Based on the foregoing, all members of the Minnesota Subclass were injured, damaged, and incurred financial loss.

178. By failing to maintain complete records regarding each Minnesota Subclass member's employment, including hours worked and any deductions from wages, Defendants violated applicable state wage and hour laws including Minn. Stat. §177.30 *et seq*. By failing to maintain employment records, Defendants injured the Minnesota Subclass and caused damages.

179.    None of the provisions of the state wage and hour laws can be contravened, set aside, abrogated, or waived by Class members.

180.    By reason of the foregoing, Plaintiff and each member of the of the Minnesota Subclass are entitled to recover from Defendants unpaid minimum wages, unpaid overtime wages, backpay, liquidated damages if available, injunctive relief, declaratory relief, prejudgment calculated at the highest legal rate, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

## COUNT FOUR

**VIOLATION OF COLORADO WAGE ACT, C.R.S. § 8-4-101 et seq.**

**(Against Defendants  Deja Vu, Inc.,  Deja Vu Consulting, Inc., n/k/a/ Pine Tree Assets, Inc., Deja Vu  Services, Inc., and Deja Vu – Colorado Springs, Inc.)**

181.    Plaintiff re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

182.    Plaintiff brings this action individually and on behalf of the Colorado Subclass.

183.    At all relevant times, Plaintiff and members of the Colorado Subclass were employees of the Defendants within the meaning of Colorado state wage and hour laws mandating the payment of minimum wages, including the Colorado Wage Act, C.R.S. § 8-4-101 *et. seq*.

184.    The Colorado Wage Claim Act ("CWCA"), C.R.S. §§ 8-4-101 to 123, the applicable regulations (7 Colo. Code Regs. 1103), and the Colorado Minimum Wage Order (currently "Wage Order No. 32") regulate wage claims in Colorado.

185.    At all relevant times, Defendants were the employers of Plaintiff and all members of the Colorado Subclass within the meaning of Colorado state wage and hour laws, including the Colorado Wage Act.

186.    Defendants were joint employers of Plaintiff and the Colorado Subclass, along with any other nominal owners of Deja Vu Nightclubs in Colorado.

187. Defendants failed to pay Plaintiff and the members of Colorado Subclass any minimum wages for their labor during the relevant time period in violation of Colorado law. All unpaid minimum and overtime wages must now be paid to the Class along with other relief appropriate under the circumstances.

188. The Colorado Wage Act requires that all employees be paid minimum wages by their employers. C.R.S. § 8-4-103, C.R.S. § 8-4-109. If an employer refused to pay all earned wages the employer is liable for the wages as well as a penalty that may meet or exceed 125% of the amount owed, or up to 10 days of the employee's daily earning, whichever is greater. C.R.S. § 8-4-109 (3); C.R.S. § 8-4-103; C.R.S. § 8-4-113.

189. The Colorado Wage Act provides for higher hourly minimum wages than the FLSA. Therefore, that wage applies to all members of the Colorado Subclass. 29 U.S.C. § 218(a). As of January 1, 2016, the minimum wage in Colorado is $8.31. ($8.31/hour as of Jan. 1, 2016, in Colorado and $7.25 per hour effective July 24, 2009, under the FLSA.)

190. If an employee is covered by federal and Colorado state minimum wage laws, then the employer must pay the higher minimum wage for tipped employees. Federal tipped minimum wage is currently $2.13 per hour, which is lower than the 2016 Colorado tipped minimum wage of $5.29 per hour.

191. Colorado law does not allow for any reduction or offset in any minimum wages based on tips received. Further, employers cannot take any portion of an employee's tips.

192. All amounts paid to members of the Colorado Subclass by customers in relation to dances performed were tips, not wages or service fees and cannot be used to offset Defendants' obligation to pay minimum and overtime wages.

193. Defendants' conduct requiring class members to split their tips and pay "rent" constituted unlawful tip splitting, which injured Colorado Subclass members.

194. Defendants actions misclassifying dancers was willful and intentional extending any applicable statute of limitations. C.R.S. § 8-4-122.

195. Based on the foregoing, all members of the Colorado Subclass were injured, damaged, and incurred financial loss.

196.    By failing to maintain complete records regarding each Colorado Subclass member's employment, including hours worked and any deductions from wages, Defendants violated applicable state wage and hour laws including C.R.S. § 8-4-101 *et seq*.

197.    By failing to maintain employment records, Defendants further injured the Colorado Subclass and caused damages.

198.    None of the provisions of the state wage and hour laws can be contravened, set aside, abrogated, or waived by Class members.

199.    By reason of the foregoing, Plaintiff and each member of the of the Colorado Subclass are entitled to recover from Defendants unpaid minimum wages, penalties, unpaid overtime wages, backpay, liquidated damages if available, injunctive relief, declaratory relief, prejudgment calculated at the highest legal rate, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

## COUNT FIVE

## CIVIL CONSPIRACY

### (Against All Defendants)

200.    Plaintiff re-alleges all preceding paragraphs of this Complaint as if fully set forth herein.

201.    Plaintiff brings this action individually and on behalf of the Class.

202.    Defendants, along with third-parties controlled and operated (directly and indirectly) by Harry Mohney, Don Krontz, George Counch and Jason Mohney, including but not limited to Deja Vu Services, Inc., Deja Vu Consulting, Inc. n/k/a Pine Tree Assets, Inc., Imagination Corp., Modern Bookkeeping Inc., MIC, Ltd., Dynamic Industries, the Durand Trust and/ DDVL, Inc. formed an enterprise, and agreed and conspired together in a common scheme to systematically misclassify dancers working in Deja Vu Nightclubs and violate federal and state wage and hour laws for financial gain.

203.    Pursuant to the common scheme or agreement, Defendants coerced and had dancers in the Class execute "Dancer Performance Leases" used commonly in the Deja Vu

Nightclubs located throughout the United States in effort to avoid paying the dancers wages and employment benefits, such as social security contributions and payroll taxes.

204.    At all relevant times, Defendants and the entities comprising the enterprise knew that the dancers were misclassified, yet intentional continued to misclassify them as independent contractors and have the dancers waive their rights.

205.    At all relevant times, Defendants and the entities comprising the enterprise knew that any attempts to have dancers working at the Deja Vu Nightclubs waive their rights to be treated as employees were void, unfair and unconscionable.

206.    Defendants' acts caused Plaintiff and the members of the Class injury and financial loss.

207.    By reason of the foregoing, Plaintiff and each member of the of the Class are entitled to recover from Defendants unpaid minimum wages, penalties, unpaid overtime wages, backpay, liquidated damages if available, injunctive relief, declaratory relief, prejudgment calculated at the highest legal rate, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

## IX.    JURY DEMAND

Plaintiff and the Class hereby request a trial by jury on all matters so triable.

## X.    PRAYER FOR RELIEF

Wherefore, based on the foregoing, Plaintiff both individually and on behalf of all members of the Class and Subclasses, requests that judgment be entered against Defendants for the following:

a.    Declaring that Defendants' acts or omissions described in this Complaint constitute violations of applicable federal and state laws that protect Plaintiff and all members of the Class and subclasses;

b.    Enjoining Defendants and its employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities,

subsidiaries and all other persons acting in concert or participation with them, from their unlawful acts;

c.     That Defendants be required to make Plaintiff and all members of the Class and subclasses whole for their adverse, retaliatory, and discriminatory actions with compensatory damages and with interest of an appropriate inflation factor;

d.     That Defendants be required to compensate Plaintiff, Collective Class members, and class members with all statutory damages, liquidated damages, civil penalties, and/or other relief allowed by federal and state wage and hour law and with interest of an appropriate inflation factor.

e.     Designation of this action as a collective action on behalf of Plaintiff and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual consent forms;

f.     An Order certifying the Rule 23 Class on behalf of the Class and Subclasses defined above; appointing Plaintiff as the Class Representative; and appointing the undersigned counsel of record as Class Counsel;

g.     That Plaintiff be awarded reasonable attorneys' fees, costs, and disbursements pursuant to statute;

///
///
///
///
///
///
///
///
///
///

h.  That the Court grant other and further relief as it deems fair and equitable.

DATED this 24th day of January 2017.

Respectfully submitted,

By: /s/ Michael Kind
Michael Kind, Esq.
Kazerouni Law Group, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117

Charles S. Zimmerman (AZ Bar No. 029602)
*Subject to admission pro hac vice*
Hart L. Robinovitch (AZ Bar No. 020910)
*Subject to admission pro hac vice*
ZIMMERMAN REED, LLP
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (480) 248-6400
Facsimile: (480) 348-6415
E-Mail: Charles.Zimmerman@zimmreed.com
E-Mail: Hart.Robinovitch@zimmreed.com

Hannah P. Belknap (CA Bar No. 294155)
*Subject to admission pro hac vice*
ZIMMERMAN REED, LLP
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA 90245
Telephone: (877) 500-8780
Facsimile: (877) 500-8781
E-Mail: Hannah.Belknap@zimmreed.com

Christopher D. Jozwiak (MN Bar No. 386797)
*Subject to admission pro hac vice*
Dustin W. Massie (MN Bar No. 0396061)
*Subject to admission pro hac vice*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
E-Mail: cjozwiak@baillonthome.com
E-Mail: dmassie@baillonthome.com

*Attorneys for Plaintiff and the Putative Class*